**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

PAUL MITCHELL,

                              Plaintiff,

             - v -                                   Civ. No. 9:05-CV-0656
                                                               (GLS/RFT)

DALE ARTUS, Superintendent, Clinton Correctional
Facility,

                              Defendant.

**APPEARANCES:**                               **OF COUNSEL:**

OFFICE OF RICHARD L. BAUMGARTEN       RICHARD L. BAUMGARTEN, ESQ.
Attorney for Plaintiff
P.O. Box 242
Buffalo, New York 14201

**RANDOLPH F. TREECE**
**UNITED STATES MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION and ORDER**

       On May 27, 2005, Plaintiff initiated this civil rights action, pursuant to 42 U.S.C. § 1983, when his attorney, Richard L. Baumgarten, Esq., of counsel, submitted for filing a verified Complaint.  Included with such submission was an Application for an Order to Show Cause for a Temporary Restraining Order and Preliminary Injunction with an accompanying Memorandum of Law.  Dkt. No. 1.

       After ensuring Defendant Dale Artus received notice of the Order to Show Cause, the Honorable Gary L. Sharpe, United States District Judge, set a Hearing on the matter.  *See* Text Only Order, dated June 17, 2005.  Defendant Artus, through his attorney Eliot Spitzer, then-Attorney General for the State of New York, and James Seaman, Assistant Attorney General, opposed Plaintiff's Application.  Dkt. No. 4.  On June 22, 2005, after holding a Hearing on the matter, Judge

Sharpe denied the Application for an Order to Show Cause for a Temporary Restraining Order and Preliminary Injunction. *See* Text Only Order, dated June 22, 2005. It appears from the Minutes of this Hearing that a discussion regarding service and jurisdiction took place, but Judge Sharpe advised the parties to "discuss the issue among themselves." Minute Entry, dated June 22, 2005.

No further activity occurred in this action until April 12, 2006, when, in a district-wide effort to ensure all attorneys are compliant with the mandatory electronic case filing procedures, the Clerk of the Court notified Attorney Baumgarten that he must, within a specific time-frame, ensure that his electronic account is both registered and activated. Dkt. No. 5. Approximately one month later, when Attorney Baumgarten still had not complied with the Clerk's Notice, the Honorable Norman A. Mordue, Chief United States District Judge, issued an Order to Show Cause why the Court should not remove Attorney Baumgarten from the Northern District of New York Bar. Dkt. No. 6. Though that Order inadvertently listed a different attorney's name in the caption, at some point Attorney Baumgarten seemingly complied with the Court's dictates with regard to the electronic filing system. However, this case remained idle.

In reviewing the Docket Report, it appears to this Court that the Defendant has not been served with process, or at least there exists no affidavit of service of the Complaint nor has there been any appearance made by Defendant, *pro se* or with representation, aside from the limited appearance made to oppose the Order to Show Cause for a Temporary Restraining Order. With the case laying dormant for at least a year and a half since Judge Sharpe's denial of the Order to Show Cause, this Court, in light of the Plaintiff's ostensible failure to prosecute this action, issued an Order to Show Cause directing Plaintiff to explain why the case should not be dismissed. Dkt. No. 7. On February 16, 2007, the Court received, via first class mail, Attorney Baumgarten's Response,

dated February 9, 2007, which is the deadline set by this Court.

First, Baumgarten explains that he is an electronic filer in the Western District of New York and, based on that, believed he had "access and availability" to the electronic filing of this District. *Id*. at ¶ 3. However, he encountered difficulties in attempting to file the Response to our Order to Show Cause. *Id*. Baumgarten claims that though he was able to access the system, "there was no mechanism available to allow for filing a document." *Id*.[1] Presumably, this is the reason for the traditional submission of his Response. This Court, however, was never contacted for permission to traditionally file such submission. Mr. Baumgarten merely presumed that such would be accepted.

Next, Attorney Baumgarten explains that Paul Mitchell, his client, was incarcerated and in the custody of the New York State Department of Correctional Services at the time when this action began. *Id*. at ¶ 4. Mitchell, who was raised by his grandparents, suffered the loss of his grandmother months before his release from custody. *Id*. Then, after his release, his grandfather became gravely ill and was frequently hospitalized. *Id*. Baumgarten proffers that it has been difficult communicating with Mr. Mitchell in light of the attention and/or assistance given to his grandfather. *Id*. at ¶ 5. Nevertheless, prior to submitting this response, Baumgarten did manage to speak with Plaintiff, who communicated his desire to go forward with the case "by filing an amended complaint." *Id*. No explanation was offered as to why an amendment of the Complaint is sought.

---

[1] The Court is flummoxed by Attorney Baumgarten's annexation of Exhibit A to his Response. As far as this Court can glean, Exhibit A contains a copy of the home page of the Court's Case Management Electronic Case Files (CM/ECF) website, available at https://ecf.nynd.uscourts.gov/cgi-bin/ShowIndex.pl. Next, Baumgarten provides a copy of the CM/ECF homepage after a successful login. The last page submitted is illegible and the purpose is unknown. We presume the purpose of submitting the Exhibit was, as expressed in his Response, to show that he was able to access CM/ECF but not able to file documents. We are unaware how such Exhibit demonstrates this inability. All this Exhibit shows us is that indeed, Baumgarten was able to access this Court's electronic filing system. Notably, there is no indication whether Baumgarten contacted the CM/ECF Help Desk either by phone or email to seek assistance with any difficulties he may have encountered.

Under the Federal Rules of Civil Procedure and Local Rules of this District, a suit may be dismissed for failure to prosecute and/or failure to comply with a court order. FED. R. CIV. P. 41(b); N.D.N.Y.L.R. 41.2(a). "A dismissal for lack of prosecution pursuant to Fed. R. Civ. P. 41(b) is a matter committed to the sound discretion of the trial Court." *Lukensow v. Harley Cars of New York*, 124 F.R.D. 64, 66 (S.D.N.Y. 1989) (citing *Harding v. Federal Reserve Bank of New York,* 707 F.2d 46 (2d Cir. 1983)). Although Rule 41(b) provides a mechanism for the Defendant to request dismissal, a district court may, *sua sponte*, dismiss an action for lack of prosecution. *Link v. Wabash R. Co.,* 370 U.S. 626 (1962); *Saylor v. Bastedo,* 623 F.2d 230 (2d Cir.1980); *see also Lukensow*, 124 F.R.D. at 66 n.3 (citing *Harding* for the proposition that although Rule 41(b) is a procedural mechanism for defendants to move for such relief, "[t]he purpose of Rule 41(b) was not to abrogate the power of courts, acting on their own initiative, to clear their calendars of cases that have remained dormant because of inaction or dilatoriness of parties seeking relief."). A dismissal pursuant to Rule 41(b) is considered to be an adjudication on the merits. FED. R. CIV. P. 41(b) ("Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision . . . operates as an adjudication upon the merits.").

Recognizing the harshness of such a dismissal, the Second Circuit has established five factors a court must consider before exercising such an austere disposition: (1) the duration of Plaintiff's failures; (2) whether Plaintiff has received notice that further delays would result in dismissal; (3) whether Defendant is likely to be prejudiced by further delay; (4) a balancing of the need to alleviate court calendar congestion and a party's right to due process; and (5) the efficacy of lesser sanctions. *Alvarex v. Simmons Market Research Bureau, Inc.,* 839 F.2d 930, 932 (2d Cir. 1988) (quoting *Harding*, 707 F.2d at 50)); *Romandette v. Weetabix Co.,* 807 F.2d 309 (2d Cir. 1986);

*see also Schwed v. Gen. Elec. Co.*, 193 F.R.D. 70, 72 (N.D.N.Y. 2000) (Mordue, J.).

The Local Rules of our District provide further guidance on Rule 41 dismissals. Specifically, we are guided that "the plaintiff's failure to take action for four (4) months shall be presumptive evidence of lack of prosecution." N.D.N.Y.L.R. 41.2(a). Here, Plaintiff has failed to take action for at least a year and a half prior to this Court's prompt for an explanation. Though we could find that Plaintiff had presumptively abandoned this claim, based upon the factors set forth by the Second Circuit, and in light of Plaintiff's expressed desire to go forward, we will not recommend dismissal based on the failure to prosecute.

However, Plaintiff has a much greater hurdle. Under Federal Rule of Civil Procedure 4(c)(1), the plaintiff is responsible for service of the summons and complaint for each defendant within a specified time period. Specifically, the plaintiff must effectuate service of process within 120 days of the filing of the complaint. FED. R. CIV. P. 4(m).[2]  Failure to properly serve any defendant in accordance with the Federal Rules will result in the court, upon motion or on its own initiative, to dismiss the case without prejudice as to that defendant. *Id*. In reviewing Baumgarten's response, this Court is truly perplexed as to how any information provided explains why he has allowed this case to remain dormant for over a year and a half. While we acknowledge that for some reason it appears that summonses were never issued in this matter, we cannot fathom how an attorney could let this case sit by the wayside for so long without any inquiry to the Court as to the status of the matter and without providing any semblance of a legitimate explanation for such misplay. With the Complaint already filed, it is unclear what further information would be needed from his client in order to effectuate service of the Complaint – you simply ask the Clerk of the

---

[2] Under the Local Rules for the Northern District of New York, a plaintiff must effectuate service within sixty (60) days. N.D.N.Y.L.R. 4.1(b).

Court to issue summonses and arrange for proper service of the summons and complaint. Baumgarten has not even taken this initial, fundamental step in prosecuting this action. The only activity that has occurred in this action has been initiated by the Court. Plenty of opportunities have been provided to Baumgarten to inquire into the status of this action, but to no avail. His explanations fall short.

**WHEREFORE**, after due consideration, it is hereby

**RECOMMENDED**, that having received notice of a pending dismissal and failing to show good cause thereof, Plaintiff's Complaint should be dismissed, without prejudice, pursuant to Federal Rule of Civil Procedure 4(m) for failure to timely serve the Defendant; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Order on the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.</u>** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).

Date:   September 28, 2007
        Albany, New York

*[signature]*
RANDOLPH F. TREECE
United States Magistrate Judge